In the United States District Court for the Middle District of Pennsylvania

Justin Credico
("Judicial / Cyber Watchdog")

v.

1) Allenwood FCI SIA Lyons,
   (individual / official capacity)
   2) Allenwood FCI SIS R. White,
   (individual / official capacity)
   3) FBOP Warden Kathy Lane,
   (individual / official capacity)
   4) Unknown Officials of FBI
   (individual / official capacity)

Civil Action No: TBA
3:18 cv 2046

Complaint for Redress



FILED
SCRANTON

OCT 2 2 2018

PER _____
DEPUTY CLERK

Complaint Seeking Redress

I. Introduction

Plaintiff, Justin Credico ("Judicial / Cyber

Watchdog") files this Complaint upon Various federal officials over an incident which transpired at Allenwood FCI, wherein various computer books and source codes, and text relating to HAM radio certifications, and works of literature, were taken and never returned.[1]

Plaintiff brings claims under the 4th and 5th Amendments, 1st Amendment censorship, 1st Amendment retaliation, detinue and conversion, and misappropriation/theft of trade secrets

Plaintiff also seeks injunctive/declaratory relief seeking return of property

Plaintiff abstains from raising FTCA claims at this time until his Bivens claims are resolved

Plaintiff gives notice that this claim involves "fundamental human interest" rights to property (books, book writing, speech, works of literature and art) – see Motion to Proceed IFP under the fundamental human interest exception to 28 USC 1915(g)

---

1. Its noted that plaintiff has attached a Motion for "Pullman Abstention/England Reservation," to bring state property torts in State Court for Williamson exhaustion. If supplemental jurisdiction is not maintained

②

# II. Parties

## A. Plaintiff

1. Plaintiff, Justin Credico ("Judicial / Cyber Watchdog") was at all times throughout this Complaint a federal prisoner at FCI Allenwood

## B. Defendants

2. SIA Lyons was at all times in this Complaint a federal official of the BOP located at FCI Allenwood

3. SIS White was at all times in this Complaint a federal official of the BOP located at FCI Allenwood

4. Warden Kathy Lane was at all times in this Complaint a Warden of the FCI Allenwood Medium facility. Its noted that she no longer is Warden at Allenwood and is Warden at some unknown facility

5. Unknown Officials of FBI were at all times in this Complaint FBI agents at some unknown location

# III Jurisdiction

## A. Bivens / Constitutional Claims

6. The Court has jurisdiction over all Bivens causes of action pursuant to 28 USC § 1331

7. The Court also has 28 USC § 1331 jurisdiction over plaintiff's constitutional claims

## B. Injunctive / Declaratory Relief Claims

8. Jurisdiction is properly before this Court to review plaintiff's claims for injunctive and declaratory relief per

## C. Supplemental Jurisdiction

9. Supplemental jurisdiction under 28 USC § 1367 is properly under this Court's jurisdiction regarding all state tort claims, so long as one federal claim is properly maintained

## IV. England Reservation

10. In the event that this Court determines that plaintiff's property claims under the 5th Amendment takings clause requires state court exhaustion per the Williamson County v. Hamilton Bank (473 US 172) holding, plaintiff seeks Pullman Abstention/England Reservation

11. Thus plaintiff will be asking the Court to Stay and abstain until State Court has an opportunity to review only plaintiff's state tort claims. Once completed, he will be returning back to this Court

## V. Statement of Facts

12. On or about January 31st 2018, plaintiff was taken into custody by the Allenwood SIA defendant and questioned plaintiff over the BOP's cyber-security

13. As part of SIS/SIA and defendants' investigation, plaintiff's property, papers, and effects were searched

14.   Two books were subsequently taken: a) PLC Programming and b) C# Programming

15.   Its noted that ~~both~~ both books were permitted into the prison, reviewed by prison staff beforehand, and prison staff had Credico sign the facilities legal mail logbook

16.   Upon questioning prison staff as to why he had to sign the legal mail logbook, staff explained to him that since he had the book sent via certified mail it was required. So he signed it and the books were given to him

17.   This point at 16 transpired around December of 2017

18.   After an unrelated event transpired in January, the BOP defendants of SIS/SIA and Warden all reviewed the 2 books; Their personal involvement is shown in the grievances, they decided that the 2 books should be confiscated

19.   Moreover, all computer code that plaintiff had in handwritten format relating to a program he was going to copyright was taken by FBI defendants

20.   FBI never gave Credico any notice, nor did BOP defendants ever give him notice that FBI had conducted

an investigation as to Credico. In fact, the BOP and FBI ran a secret operation of review as to all cyber-related documents Credico had. It was only after an unknown official told Credico that FBI did an investigation that he found out. Had he not told Credico, then Credico never wouldve known a secret operation transpired[2]

21.  However, while Credico was in SHU he inquired as to what was to become of his codes, books, and 2 books. He was told SIS would be coming to talk to him about it all

22.  At some point in time in June  SIS White and an unknown BOP official discussed the property issue with Credico. White told Credico that the Warden, Lyons and him have all reviewed the 2 books and decided that they would be confiscated

23.  Credico started arguing over the situation and told them that he is suing them for sure over this.

2. Typical of the scumbag U.S. gov't to run secret operations that violate rights and not tell anyone. We wonder how any redress can be obtained when dirty tactics like this are conducted

⑦

24. After Credico told White he'll be suing and seeing him in Court, White then refused to permit Credico to sign the BOP property sheet section that allows an inmate to have confiscated property sent to the inmate's residence

25. Credico then at some time around a week or two later discussed the matter with the property officer. This property officer told Credico that after what transpired between White and Credico, White was the one who now had custody and control over the 2 books and was refusing to mail them to Credico's residence

26. To this date, no books have ever arrived at Credico's residence

27. To this date, no FBI confiscated source codes belonging to Credico have ever been returned, nor has Credico ever been told or given notice that FBI even has them. But, when Credico talked to the Allenwood property officer, he was told that FBI did in fact have them[3]

3. Its noted that the property officer was not the official who told Credico that the FBI and BOP did a secret operation on this issue

28. To date, no personal HAM radio ~~their~~ literature taken by FBI has ever been returned, nor notice given to the plaintiff that FBI took them

29. To date, the personal book that Credico was writing and going to copyright, on behalf of his deceased mother, has never been returned, nor notice given that FBI took them.

30. Its noted that Credico's computer hand-written source code is his trade-secret, and the book he was writing and going to copyright is not open-source at this time to the public

## VI. Specific Causes of Action

31. When Warden Lane, Lyons, and White all personally reviewed Credico's 2 books and decided not to return them back, this constituted Censorship, detinue/conversion

32. When White refused to allow Credico to sign the property form to have the books mailed home, after Credico told him he was suing him, this was retaliation

33. When FBI took Credico's property, without notice, this constitutes a 5th Amendment "Horne" takings claim, detinue and conversion, and unreasonable government seizure under 4th Amendment, as well as, misappropriation/theft of trade secrets

VII Claims

### A. First Amendment Censorship
defendants: Lyons, White, and Lane

34. Credico alleges that the taking and refusing of his retention of his 2 computer books violates his first amendment rights to be free from censorship

35. Censorship claims are reviewed under a Turner-Safley test ("Turner test") which requires a review of 4 prongs:

a) whether a rational valid connection between the regulation and the government interest exist;

b) whether alternative means of exercising the right remains open to inmates;

c) the impact which accomodation of the asserted prisoner right will have on the prison generally;

d) whether there is an absence of ready alternatives exist

(see Nasir v. Morgan, 350 F.3d 366 (3d Cir. 2003))

36. As applied to the censoring and taking of plaintiff's 2 computer programming books, the BOP and FBI defendants do not meet the Turner tests constitutionality requirement

a) A work of literature containing computer printed text on C# game programming without a compilation CD does not hinder security in any way. In fact, the 2 books did not contain any info on any BOP Policy regulation as listed in PS 1237.16 part 14.8 (Computer Policy - Prohibited publications such as hacking/viruses)

b) The BOP defendants do not provide any alternate means of research, review, reading, or learning any computer programming language. This amounts to a total censorship. The BOP's IT training provides absolutely no programming knowledge

c) In today's highly technical developed life, wherein we are surrounded by computers at every turn, and a field that is constantly on an economic rise, programmers are highly sought after. In fact, the Dept of State actually removed the immigration ban for any immigrant who possessed programming knowledge. Since the prison does not have a program compiler, any text on programming is harmless regardless of its contents

d) The only alternative the BOP provided, the BOP and FBI defendants chose to ignore, and still censored plaintiff.

To wit, PS1237.16 part 14.1.2 (Theoretical concepts) permits prisoner retention on info on hacking/viruses, and the 2 books did not even have hacking/virus info. Part 14.8 then contradicts part 14.1.2, but the only alternative is the BOP 1237.16 policy

## B. Retaliation
### defendant: White

37. A first amendment retaliation claim requires a showing of 3 prongs:
    a) prisoner engaged in protected activity;
    b) adverse action was done to prisoner over the usage of the right;
    c) a nexus between the two exists

38. Officer White retaliated upon plaintiff when he refused to let him sign the release of property form directly after Credico told him that he will be suing him and filing grievances, and refusal to send him his books to his residence

39. Any statement to threaten to sue and file grievance is protected (see e.g. Booth v. King, 346 F Supp 2d 751 (EDPA); Bendy v. Ocean Cnty. Jail, 341 Fed Appx 799 (3d Cir);

and see <u>Razzoli v. Director of FBOP, 293 Fed Appx 852 (3d Cir 2008)</u>

b) The adverse action done by White was the refusal to permit Credico to sign the proper form that White had, and further refused to send the 2 books to his residence after Credico told him he'd be filing lawsuits and grievances. This direct refusal following the threats to sue and grieve satisfies the "action" requirement

c) the refusal which followed from the grievances and threat to sue is all that is needed to show the nexus

## C. Detinue and Conversion
<u>defendants: Lyons and White and Lane</u>

40. <u>Detinue</u> under PA state law is the request for the return of property by one who refuses to relinquish it

41. <u>Conversion</u> is a PA state law action for the full value of the property upon one who seriously interferes with the property rights of another  <u>(see Marsh v. Ladd, 2004 Lexis 22099 (EDPA)</u>

43. Credico brings <u>detinue</u> claims upon the above defendants, seeking the return of all taken property by the BOP. Because, Lyons, White and Lane all personally

decided to refuse to return the property, and, refused to return it back to his residence the claim of detinue stands

44. Credico also raises conversion claims for the full value of the 2 books that were taken. including the costs of certified mail delivery

## D. First Amendment Censorship
### defendants: Unknown Officials of FBI

45. The identities of these defendants can be discoverable via the discovery stages of litigation To wit, the BOP contacted the FBI to do a covert operative investigation, which included analysis of Credico's handwritten computer codes and HAM radio information

46. It bears repeating, that his source-code in handwritten text format (ASM (32/64 bit) and C-code) can not be used unless compiled by a 3rd party software source which prisons do not have

47. Nonetheless, the defendants' refusal to return, in tandem with their takings, chills plaintiff's speech which gives him Article III rights to raise this claim

48.   Its noted that computer code constitutes speech under First Amendment standards (see e.g. Junger v. Daley, 209 F.3d 481 (6th Cir )); Karn v. Dep't of State, 925 F. Supp. 1 (D.D.C.); Universal v. Reimerdes, 82 F. Supp. 2d 211 (2nd Cir Dist Crt); Bernstein v. U.S. DOJ, 176 F.3d 1132 (9th Cir)

## E. Misappropriation / Theft of Trade Secrets

defendants: all defendants

49. Under the PA Uniform Trade Secrets Act (12 Pa. C.S.A. § 5302 et seq.) and Uniform Trade Secrets Act, plaintiff's codes constitute trade secrets as that term is defined (see Bimbo Bakeries v. Botticella, 613 F.3d 102 (3d Cir. 2010)); Advanced Fluid v. Huber, 2017 US Dist Lexis 86145 (3d Cir Dist Crt)

50. As applied here, the handwritten text formatted computer source code contained plaintiff's trade secrets in the art of virology and computer malware heuristics. His codes also contained integrity scanner source and cyber security source code that was not available to anyone but plaintiff

(15)

51. This code data, constitutes as being a; compilation, program, method, technique, information, pattern of heuristics, and process that derives economic value from not being known. In that it can be sold as security software once finalized. And, plaintiff in order to maintain its secrecy as best as possible, wrote the source in the most complex programming language known. Assembly (95% of programmers do not know ASM language)

52. When defendants took these source code papers they misappropriated plaintiff's trade secrets. And it must be noted that, "even when acquired by mistake," misappropriation holds (see Ideal v. Acutronic, 2007 US Dist Lexis 9644 (WDPA))

53. The only time trade secrets can not make a cause of action, is when a 3rd party, who is under no obligation to maintain its secrecy, divulges the info. which is not applicable here. Since BOP defendants called in the FBI to run a secret investigation, during which Credico immediately notified via BOP grievances that he raises trade secrets, all defendants knew such trade secrets existed, and the codes should've been returned or mailed to his residence. Moreover, the book k was writing on behalf of his mother also is a trade secret compilation until published

(16)

## F. Fourth Amendment

defendants: all defendants

54. Credico alleges that by taking his trade secrets and other Constitutionally first amendment protected texts, this was a violation of unreasonable seizure under the 4th amendment

55. Unreasonable seizure is shown by the manner in which the entire BOP joint FBI operation was conducted under veils of secrecy. Normal BOP policies regarding FBI investigations with SIS and Warden, require a prisoner to be given a SIS paper indicating that the BOP investigation has been sent to FBI for prosecution. And any materials taken, require an itemization sheet indicating what property was taken. No notice, no itemization, was ever given to plaintiff

## G. Fifth Amendment
## Takings Claims

defendants: all defendants

56. Recently the Supreme Court has permitted as applied takings claims regarding private property that was physically taken by the government (see Horne, 135 S.G. 2419)

57. Credico alleges that these defendants took his protected property without notice, and without compensation. And since his codes, texts, book (on behalf of his mother) and HAM radio text were all private property, then, this constitutes a "Horne" direct invasion of private property

58. Its noted that BOP may search at whim, but they may not "take" without "notice" and without "compensation" All private property, except 2 books, were taken as part of some BOP/FBI secret operation and never returned. This type of action fits precisely within the Supreme Court's "Horne" takings claim

## H. Injunctive / Declaratory Relief

defendants: all defendants

59. Credico seeks extraordinary relief upon the official capacities of defendants, seeking return of everything taken

## VIII. Exhaustion

60. Despite exhaustion being defendants' affirmative defense, Credico forecloses it by stating that all available remedies were exhausted unsuccessfully

61. In fact Central Office stated that all their officers are honest, and the sine qua non reply was the Snark defense (see Lewis + Carrol Hunt for the Snark) wherein, whatever the government says must be true

62. Moreover, Central Office knew the FBI/BOP did a Secret operation and refrains from giving notice to plaintiff

63. And, the Central Office states that SIS gave the plaintiff an opportunity to have the 2 books mailed, when in fact these books were not mailed when Credico repeatedly requested them back (see Claims B, E, F, G)

## IX. Relief Requested

A. Compensatory and punitive damages of $250,000
B. Injunctive / Declaratory relief of return of property

10-16-18
Dated

Justin Credico
Justin Credico

19

# Certificate of Service

Case Name: Credico v. Allenwood SIA Lyons, et al

Case No: TBA

Re: Complaint for Redress, Mot. to Proceed IFP, Mot. for England
Reservation / Pullman Abstention

I hereby certify that on this 16th day of October 2018, one true copy of these matters was sent via first class mail to:

Clerk of Courts
235 N. Washington Ave
Box 1148
Scranton PA 18501

(Complaint - 19 pgs)
(IFP Mot. - 3 pgs)
(IFP Mem. of Law - 4 pgs)
(England Res. Mot. - 3 pgs)
(England Res. Mem. of Law - 5 pgs)
(Cert. of Serv. - 1 pg)
35 pgs total

10-16-18
Dated

Justin Credico
Justin Credico

Justin Credico   # 71239066
Federal Correctional Institution Berlin
P.O. Box 9000
Berlin NH 03570

FCI BERLIN
P.O. BOX 69 BERLIN, NH 03570
DATE: 10-17-18

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer enclosed correspondence for forwarding to another addressee, please return the enclosed to the above address.

**RECEIVED**
**SCRANTON**

OCT 2 2 2018

PER _____
DEPUTY CLERK

Clerk of Court
U.S District Court (MD/PA)
235 North Washington Ave
Box 1148
Scranton PA 18501